FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 16, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES G., | NO: 1:24-CV-03088-RLP |
| Plaintiff, | |
| v. | ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| CAROLYN COLVIN, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

---

[1] Carolyn Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Rules of Civil Procedure, Carolyn Colvin is substituted for Martin O'Malley as the Defendant in this suit.

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 1

BEFORE THE COURT is an appeal from an Administrative Law Judge (ALJ) final decision, denying supplemental security income under Title XVI of the Social Security Act. ECF No. 11. For the reasons discussed below, the Court concludes that the ALJ failed to make sufficient findings before rejecting Mr. G.'s symptom testimony and that the ALJ's reasons for rejecting medical opinions in support of Mr. G.'s symptom testimony were vague or unsupported. Therefore, Mr. G.'s brief, ECF No. 11, [2] is granted and the Commissioner's brief, ECF No. 12, is denied. The ALJ's decision is reversed and the matter is remanded for further administrative proceedings.

## JURISDICTION

Mr. G. filed for supplemental security income (SSI) on February 20, 2019, and alleged an onset date of January 1, 2008.[3] Tr. 237-42. Benefits were denied initially, Tr. 147-60, and upon reconsideration, Tr. 164-70. Mr. G. appeared at a

---

[2] Mr. G.'s opening brief is labeled a Motion for Summary Judgment. ECF No. 11. The supplemental rules for Social Security actions under 42 U.S.C. § 405(g) went into effect on December 1, 2022; Rule 5 and Rule 6 state the actions are presented as briefs rather than motions. Fed. R. Civ. P. Supp. Soc. Sec. R. 5, 6.

[3] Under Title XVI, benefits are not payable before the date of application. 20 C.F.R. §§ 416.305, 416.330(a); S.S.R. 83-20.

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 2

hearing before an administrative law judge (ALJ) on November 18, 2020. Tr. 64-83.

On July 23, 2020, the ALJ issued an unfavorable decision, Tr. 12-31, and on July 7,

2021, the Appeals Council denied review. Tr. 1-6. Mr. G. appealed to the United

States District Court for the Eastern District of Washington, and on June 6, 2022, the

Honorable Lonny R. Suko remanded the matter for additional proceedings. Tr. 1112-

30. After a second hearing on December 5, 2023, the ALJ issued another

unfavorable decision on February 14, 2024.[4] Tr. 656-83. The matter is now before

this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts,

the ALJ's decision, and therefore require only brief summary.

---

[4] On November 18, 2021, Mr. G. filed a subsequent application for SSI. Tr.

1342-47. The state agency determined at the initial level that Mr. G. became

disabled as of the date of his application. Tr. 1149-50. The Appeals Council

reopened the subsequent determination because it found the initial determination

was not supported by substantial evidence. Tr. 1150. Pursuant to the November

21,2022 order of the Appeals Council, the ALJ considered the consolidated claims

in making the decision before this Court. Tr. 1028, 1150.

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 3

Mr. G. was born in 1970 and was 48 years old at the time of application. Tr. 1042. He graduated high school and completed a year of college. Tr. 1060. He has work experience as a mason and in construction. Tr. 1060. Mr. G. testified he has not been able to work due to his impairments. 1061. He has hip dysplasia with a torn labrum and femoroacetabular impingement, limiting hip mobility and sometimes resulting in his hip to "lock[ ] up." Tr. 1061. He has herniated discs and COPD. Tr. 1062, 1064. Mr. G. testified he has mental health impairments from PTSD and depression. Tr. 1065. He takes medication for anxiety. Tr. 1069.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 4

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must meet two criteria to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 5

his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, if the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b). At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's residual functional capacity (RFC). At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). At step five, the Commissioner considers whether, in

view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Mr. G. challenges the ALJ's assessment of his RFC, arguing the ALJ erroneously rejected his symptom testimony and improperly evaluated medical opinions that supported his symptom testimony. Because Mr. G. has no past relevant work, this means only that, as a technical matter, only step five of the aforementioned sequential evaluation process is at issue.

The Court briefly reviews the steps that are not at issue. At step one, the ALJ found Mr. G. has not engaged in substantial gainful activity since his application for benefits. Tr. 1030. At step two, the ALJ found the following severe impairments: lumbar spine disorder, mild joint disease, depression, and posttraumatic stress disorder. Tr. 1030. At step three, the ALJ found Mr. G. does not have an impairment or combination of impairments that meets or medically equals the severity of a listed

impairment. Tr. 1031. And at step four, the ALJ determined Mr. G. has no past relevant work. Tr. 1042.

With respect to the RFC, the ALJ found:

The claimant can stand/walk up to 4 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday with normal breaks. He is capable of frequent climbing ramps or stairs and balancing. He is limited to occasional climbing ladders, ropes or scaffolds, stooping, kneeling, crouching and crawling. The claimant must avoid concentrated exposure to respiratory irritants and hazards. The claimant is limited to simple, repetitive tasks with no interactions with the public except incidental contact with the public is allowed. The claimant can have occasional interaction with coworkers.

Tr. 1033.

The ALJ's determination at step five was based on the RFC finding. After considering the testimony of a vocational expert and Mr. G.'s age, education, work experience, and residual functional capacity, the ALJ found there are jobs existing in significant numbers in the national economy the claimant can perform such as production assembler, electrical accessories assembler, and mail clerk. Tr. 1043.

Based on the adverse finding as to step five, the ALJ determined Mr. G. has not been under a disability within the meaning of the Social Security Act at any time since the date of his application on February 20, 2019. Tr. 1043.

## DISCUSSION

The ALJ's RFC determination was based on a rejection of Mr. G.'s testimony regarding the severity of his impairments. When it came to his physical

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 8

impairments, Mr. G.'s claim that "his back pain worsened so that he could not walk, sit, or stand for any amount of time" and that "bending at the waist cause[d] nerve compression and pain." Tr 1034. The ALJ found this testimony not supported by the record and the ALJ also rejected the opinion evidence from medical providers that would tend to support Mr. G.'s testimony. Mr. G. contends ALJ erred in rejecting his testimony and the medical opinion evidence. The Court agrees.

**A.    Mr. G.'s Symptom Testimony**

A two-step process applies to an ALJ's assessment of a claimant's testimony regarding subjective pain and symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). Second, if there is such evidence and there is no sign of malingering, the claimant's testimony should generally be accepted unless there is clear and convincing evidence in support of rejection. *See Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). "[T] he ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 9

and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Here, the ALJ rejected Mr. G.'s testimony under the second step of the analysis. The ALJ agreed with Mr. G. that his "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms." Tr at 1035. But the ALJ rejected Mr. G.'s testimony regarding the severity of the symptoms, reasoning that they were "not entirely consistent with the medical evidence and other evidence in the record." *Id.*

The Court agrees with Mr. G. that several of the ALJ's reasons for rejecting his symptom testimony are not based on clear evidence in the record. Three points of the ALJ's analysis are salient. First, the ALJ claimed Mr. G.'s testimony was contradicted by evidence that his symptoms improved with treatment. Second, the ALJ reasoned that Mr. G.'s failure to follow through with treatment contradicted his position regarding the severity of his symptoms. And third, the ALJ determined Mr. G.'s description of his symptoms was inconsistent with longitudinal evidence. All three of these areas of criticism are based on inaccurate or uncompelling citations to the record. Each is discussed in turn.

First, the ALJ found "treatment for [Mr. G.'s] physical conditions has helped to reduce symptoms." Tr. 1036. In support of this observation, the ALJ cited to records issued four months after Mr. G's back surgery. *See* Tr 1036. However, the

1    record referenced by the ALJ indicates Mr. G. in fact still had "a tremendous

2    amount of back pain" after the surgery and walked with a "rather severe antalgic

3    gait." Tr. 1863. In addition, the ALJ cited a 2022 note indicating Mr. G. only had

4    mild worsening of pain that was aggravated by "climbing stairs, movement,

5    walking, and standing." Tr. 1036. But the ALJ failed to recognize that only a few

6    days prior, Mr. G.'s pain was rated at a severity of 9 and was rated at 10. Tr. 1830,

7    1833. This does not support the conclusion that treatment improved Mr. G.'s

8    symptoms. The ALJ also stated "[n]on-operative treatment was recommended." Tr

9    1036. But the January 2023 record cited by the ALJ relates to evaluation of Mr.

10    G.'s hip and indicates non-operative treatment options were discussed, but

11    injections or surgery would be an option upon further evaluation. Tr. 1036, 2136.

12    Again, this record does not support the ALJ's finding that Mr. G.'s symptoms

13    improved with treatment or suggest conservative treatment was recommended.

14    Other records cited by the ALJ are similarly not reasonably construed as

15    substantial evidence supporting this reasoning. Tr. 1036-37.

16         Second, the ALJ found Mr. G.'s unexplained failure to follow through with

17    treatment "suggests his pain is less bothersome than alleged." Tr. 1037. In support

18    of this finding, the ALJ referenced Mr. G.'s testimony that he had not participated

19

20

21

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 11

in physical therapy since 2020,[5] despite being advised to do so. Tr. 1036, 2129. The corresponding portion of the record states Mr. G. was notified in July 2023 that his insurance denied coverage for hip surgery, so his doctor's office advised him to complete three months of physical therapy to show conservative treatment did not help. Tr. 2129. At the December 2023 hearing, Mr. G. explained the doctor's office never made the physical therapy referral and he had recently followed up but had not received a return phone call or message in his online portal. Tr. 1073-74. Given this testimony, the ALJ erred in claiming Mr. G.'s failure to comply with treatment was not explained. This is not a clear and convincing reason supported by substantial evidence.

Third, the ALJ found Mr. G.'s statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the longitudinal evidence. Tr. 1037. However, the ALJ only cited three examples of medical evidence showing inconsistency. The ALJ cited one report during a medication management visit that Mr. G. was "doing well" (Tr. 597); a report to his physical therapist that he had not done his home exercises since the last visit because he had

---

[5] The Court notes the record contains at least one physical therapy note dated January 26, 2022, which is cited by the ALJ later in the decision. Tr. 1037,1650. This discrepancy is not addressed by the ALJ or the parties.

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 12

been sick and forgot (Tr. 1650); and office visit notes showing Mr. G. at times denied depression or anxiety symptoms (e.g., Tr. 1430, 1864, 1881, 2024). This is not compelling evidence of inconsistencies in the record, and this is not a clear and convincing basis for discounting Mr. G.'s symptom statements.

The ALJ also referenced Mr. G.'s daily activities as part of the longitudinal evidence deemed inconsistent with the symptom statements. Tr. 1037. This consideration is not out of bounds. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). But it must be exercised with caution. It is well-established that a claimant need not "vegetate in a dark room" to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016; *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Here, the ALJ suggested activities reported by Mr. G. such as reading, watching television, making meals, and visiting with family are inconsistent with allegations of difficulty sitting, standing, walking, and mental symptoms. Tr. 1037. However, the ALJ cited no records indicating Mr. G. does any of these activities

constantly or for a length of time inconsistent with the limitations he alleged. This is not substantial evidence supporting the ALJ's reasoning.

The ALJ also cited an October 2019 record indicating Mr. G. was "getting ready to go hunting" and a September 2020 record indicating Mr. G. "[w]ill go hunting next month with family." Tr. 597, 951, 1037, 1039. It may be reasonable to infer that hunting is inconsistent with the significant limitations alleged by Mr. G. depending on the level of activity involved, but without more, these records are insufficient to constitute a clear and convincing reason supported by substantial evidence.

In addition to the three aforementioned reasons for rejecting Mr. G.'s testimony, the ALJ found Mr. G.'s allegations of physical pain and impairment are out of proportion to the objective medical findings. Tr. 1035. This consideration is relevant, but it cannot be the sole basis for discrediting a claimant's pain testimony. *Rollins*, 261 F.3d at 857. As discussed above, many of ALJ's other reasons for discounting Mr. G.'s physical symptom testimony are based on error and are not clear and convincing reasons supported by substantial evidence. As a result, even if the ALJ's finding regarding the objective medical evidence were properly supported, this would not be a legally sufficient basis for discounting Mr. G.'s statements. Thus, the matter must be remanded for reevaluation of the evidence and Mr. G.'s testimony.

Lastly, the ALJ considered Mr. G.'s testimony regarding his mental impairments and found the objective evidence of mental health findings and his response to mental health treatment are inconsistent with his allegations of disabling mental health symptoms. Tr. 1038. Because this matter must is remanded for reconsideration of Mr. G.'s physical symptom testimony, the ALJ should also reconsider Mr. G.'s testimony regarding his mental health symptoms.

**B.     Medical Opinions in Support of Symptom Testimony**

In addition to rejecting Mr. G.'s testimony regarding the severity of his symptoms, the ALJ also rejected various medical opinions offered in support of Mr. G.'s symptom testimony. Under governing law, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a) and (b). Special weight is not to be accorded to certain types of providers. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5867-88 (Jan. 18, 2017); 20 C.F.R. § 416.920c. Instead, the ALJ is to evaluate all medical opinions on their own terms.

Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). In evaluating supportability, the more relevant the objective medical

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 15

evidence and supporting explanations provided by a medical source to support his or her opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(1)-(2). In evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(1)-(2). The ALJ may, but is not required, to explain how other factors were considered. 20 C.F.R. § 416.920c(b)(2); *see* 20 C.F.R. § 416.920c(c)(1)-(5).

Mr. G. claims the ALJ failed to properly evaluate the medical opinion evidence from Doctor Dave Atteberry, Dr. Charles Bulfinch, Dr. David Morgan, Dr. Jan Kouzes, and mental health counselor Sally Forrest. Drs. Atteberry and Bulfinch provided opinions relevant to Mr. G.'s physical complaints. The remaining professionals provided opinions pertaining to Mr. G.'s mental health. Although this Court's decision is based on the ALJ's rejection of Mr. G.'s physical complaints, the Court discusses Mr. G.'s criticisms of each professional, as the evidence will need to be reevaluated on remand.

*1. Dave Atteberry, M.D.*

Dr. Atteberry is a neurosurgeon and one of Mr. G.'s treating physicians. He performed back surgery on Mr. G. in 2021 and 2022. In October 2022, Dr. Atteberry completed a Medical Report form and opined Mr. G. can lift or carry ten pounds frequently and less than ten pounds occasionally; can stand or walk about two hours

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 16

and sit four hours in an eight-hour workday; and he needs to sit, stand, and walk around in 30-minute increments and to sit, stand, and walk at will to relieve discomfort.  Tr. 1602-03. Dr. Atteberry also opined Mr. G. would be off task 16-25% of the workday due to his impairments; needs to lie down a couple of times per week during the workday; and is limited to occasional twisting, stooping, crouching, climbing stairs, and climbing ladders. Tr. 1603. He indicated Mr. G. is limited to sedentary work by lumbar stenosis with multiple level disc degeneration. Tr. 1603-04.

The ALJ rejected Dr. Atteberry's opinion regarding the limitation to sedentary work, two hours of standing and walking, and need for incremental sitting, standing, and walking, and the off task and attendance limitations. Tr. 1038-39.

Regarding supportability, the ALJ found Dr. Atteberry's opinion limiting Mr. G. to sedentary work is not adequately supported. Tr. 1038. The ALJ noted Dr. Atteberry performed Mr. G.'s laminectomy, opined that most of his post-operative problem came from his hip, and recommended that Mr. G. proceed with hip surgery and consider a lumbar fusion later if necessary. Tr. 1038 (citing Tr. 1863-65, 2022). The ALJ observed Mr. G. sought a second opinion from Dr. Chang who disagreed with Dr. Atteberry, and a third opinion from Dr. Sethi who concurred with the suggestion of hip surgery but otherwise recommended conservative treatment. Tr. 1038 (citing Tr. 2172-74). Even assuming the ALJ's characterization of the contents

of these opinions is correct (and the Court does so find), the ALJ did not explain how any conflict in the opinions of the surgeons regarding the degree or order of treatment reflects on the supportability of Dr. Atteberry's opinion as to Mr. G.'s limitations. The record does not contain opinions from Dr. Chang or Dr. Sethi regarding Mr. G.'s functional limitations, so there is no contradiction or lack of support for Dr. Atteberry's assessment on that basis.

The ALJ also found Dr. Atteberry's opinion that Mr. G. is limited to standing and walking for about two hours is not supported. Tr. 1038-39. The ALJ recognized Dr. Atteberry's status as a treating provider was considered, "but also that Dr. Atteberry comes from the perspective of handling the claimant's back surgery."  Tr. 1039. This reasoning is not further explained and the inference from Dr. Atteberry's status as Mr. G.'s treating surgeon is unclear. This is not a reasonable basis for finding Dr. Atteberry's assessment unsupported.

The ALJ further found Dr. Atteberry's assessment that Mr. G. requires the ability to sit, stand, and walk intermittently is unsupported. Tr. 1039. The ALJ asserts Dr. Atteberry's conclusion is not "well explained or supported by specific treatment or examining records."  Tr. 1039. However, as discussed above, Dr. Atteberry's October 2022 note that Mr. G. had "a tremendous amount of back pain" and he walks with a "rather severe antalgic gait" would at least arguably support his assessment regarding the need to change positions. It is not apparent the ALJ

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 18

adequately considered Dr. Atteberry's treatment notes in finding his opinion unsupported.

Regarding consistency, the ALJ suggests Dr. Atteberry's opinion regarding the limitation to sedentary work is inconsistent with workup findings, observations of "no acute distress" in the record, and evidence of noncompliance with treatment recommendations. Tr. 1038. First, as discussed above, the ALJ's assessment of noncompliance is not based on substantial evidence. Second, courts have questioned the significance of the generic chart note of "no acute distress" regarding chronic conditions. *See Toni D. v. Saul*, No. 3:19-cv-820-SI, 2020 WL 1923161, at *6 (D. Or. April 21, 2020), *citing Mitchell v. Saul*, No. 2:18-cv-01501-GMN-WGC, 2020 WL 1017907, at *7 (D. Nev. Feb. 13, 2020) ("Moreover, the court agrees with Plaintiff that notations that Plaintiff was healthy 'appearing' and in no 'acute' distress do not distract from the findings regarding Plaintiff's chronic conditions."); *Richard F. v. Comm'r of Soc. Sec. Admin.*, No. C19-5220 JCC, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019) ("Clinical findings of 'no acute distress' do not undermine Plaintiff's testimony. 'Acute' means 'of recent or sudden onset; contrasted with chronic.' Oxford English Dictionary, acute (3d ed. December 2011). Plaintiff's impairments are chronic, not acute."). Third, the "workup findings" cited by the ALJ include two MRIs and an x-ray of Mr. G.'s hips. Tr. 1038 (citing Tr. 1419, 142-22, 2001-02, 2116). It is not apparent how these undermine or are

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 19

inconsistent with Dr. Atteberry's assessment of Mr. G.'s functional limitations overall.

The ALJ also found Dr. Atteberry's assessment that Mr. G. is limited to two hours of standing and walking and needs the ability to alternate sitting, standing, and walking is not consistent with other evidence in the record. Tr. 1038-39. The ALJ found these limitations are not consistent with strength findings, often normal gait, or grossly normal hips and knees even when gait was antalgic. Tr. 1039. The ALJ also found these limitations inconsistent with Mr. G.'s reports that he was hunting and sitting for long periods of time. Tr. 1039 (citing Tr. 597, 1569). First, as discussed above, while hunting might be inconsistent with the standing and walking limitation, depending on the type of hunting and how long it is performed, there is no evidence the activities mentioned by Mr. G. such as making coffee, taking medication, reading the newspaper, making breakfast, watching television, resting, and visiting with family, are performed in a manner inconsistent with these limitations. In fact, the sit/stand/walk at will limitation is entirely consistent with such activities. Second, even if the physical findings cited by the ALJ could be said to be inconsistent with Dr. Atteberry's assessment, the other flaws in the ALJ's reasoning mean the ALJ's evaluation of Dr. Atteberry's opinion is not supported by substantial evidence.

Lastly, the ALJ rejected Dr. Atteberry's opinion that Mr. G. needs to lie down during the day a couple of times per week and would be off task for 16-25% of the time without any explanation. Tr. 1039. The ALJ observed Dr. Atteberry's assessment of the need to lie down and off task periods is inconsistent with Dr. Bulfinch's more restrictive assessment, but the ALJ also rejected Dr. Bulfinch's opinion. This is not an inconsistency which reasonably undermines Dr. Atteberry's opinion. The ALJ rejected Dr. Atteberry's attendance limitation as an "extreme" limitation insufficiently supported by reference to lumbar stenosis with multiple level disc degeneration. Tr. 1039. However, the ALJ appears to have mistakenly considered Dr. Atteberry's opinion as indicating "absenteeism at 4 or more days a week." Tr. 1039. Rather, Dr. Atteberry opined Mr. G. would miss work four or more days per month. Tr. 1039. This is additional basis for remand.

### 2. Charles Bulfinch, D.O.

Dr. Bulfinch has worked as Mr. G.'s primary care provider. Dr. Bulfinch completed a Medical Report form in November 2023 and opined Mr. G. can lift or carry less than ten pounds; can stand or walk about two hours and sit three to four hours in an eight-hour workday; he needs to sit, stand, and walk around every 30-60 minutes and to sit, stand, and walk at will. Tr. 2177. Dr. Bulfinch also opined Mr. G. would be off task 25-50% of the workday due to his impairments; needs to lie down every 60 minutes or so during the workday; and can never twist, stoop, crouch, or

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 21

climb ladders and only occasionally climb stairs. Tr. 2178. He indicated Mr. G. is limited to either sedentary work or less than sedentary work (with a hand-written notation that Mr. G. was "probably more towards the less than sedentary work") and would miss four or more days of work per month due to his impairments. Tr. 2178-79.

The ALJ applied many of the same reasons for rejecting Dr. Atteberry's opinion to Dr. Bulfinch's opinion. Tr. 1038-39. For the same reasons discussed above, the ALJ evaluation of Dr. Bulfinch's opinion is not supported by substantial evidence.

*3. Mental Health Opinions*

<u>David Morgan, Ph.D.</u>

Dr. Morgan is a DSHS examiner. In October 2021, Dr. Morgan completed a DSHS Psychological/Psychiatric Evaluation form and found Mr. G. has symptoms of depression and PTSD. Tr. 1424. Dr. Morgan assessed marked limitations in five functional areas and moderate limitations in six functional areas and rated the overall severity of the combined impact Mr. G.'s impairments as moderate. Tr. 1425. The ALJ found Dr. Morgan's opinion partly persuasive. Tr. 1040.

Regarding supportability, the ALJ generally found Dr. Morgan's opinion persuasive as to social limitations and simple work and supported by findings of depressed mood, normal affect, normal thought process and content, orientation,

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 22

perception, fund of knowledge, abstract thought, and insight and judgment. Tr. 1040; *see* Tr. 1426-27.

Regarding consistency, the ALJ rejected Dr. Morgan's mental status exam findings regarding recent and immediate memory and concentration, explaining "are greater than the limited findings of difficulty in these areas by treating providers." Tr. 1040; *see* Tr. 1427. This reason for rejecting Dr. Morgan's opinion is not sufficiently specific. It is insufficient for the ALJ to reject an opinion by merely stating, without more, that there is a lack of objective medical findings in the record to support it or that it is inconsistent with other evidence in the record. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). On remand, Dr. Morgan's opinion should also be reassessed.

<u>Jan Kouzes, Ed.D.</u>

Dr. Kouzes is also a DSHS examiner. In August 2018, Dr. Kouzes completed a DSHS Psychological/Psychiatric Evaluation form and diagnosed bipolar disorder, opioid use disorder in early remission by report, panic disorder, and PTSD. Tr. 462-67. Dr. Kouzes assessed marked limitations in three functional areas and moderate limitations in five functional areas and rated the overall severity of the combined impact Mr. G.'s impairments as moderate. Tr. 464-65. The ALJ found Dr. Kouzes' opinion moderately persuasive. Tr. 1040.

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 23

Regarding supportability, the ALJ found Dr. Kouzes' opinion unsupported because it was made before the application date and the only record reviewed by Dr. Kouzes was a 2014 DSHS evaluation. Tr. 1040; *see* Tr. 462. However, Mr. G. alleged disability beginning in 2008 so Dr. Kouzes' opinion is relevant evidence. Furthermore, Dr. Kouzes examined Mr. G., so his review of only one prior record does necessarily mean the opinion is unsupported. The ALJ acknowledged mental status exam findings include mood problems (depressed, anxious/fearful, bleak, Tr. 466) but observed all other findings were within normal limits, including memory fund of knowledge, concentration, insight, and judgment. Tr. 466-67, 1040.

Regarding consistency, the ALJ found Dr. Kouzes' opinion is "outside" the observations of other mental health treatment providers and is inconsistent with mental health treatment records. Tr. 1040. This finding is vague and lacks citation to the record. As noted above, more specific findings are required. *Id.* On remand, the ALJ should also reconsider Dr. Kouzes' opinion.

Sally Forrest, MA, MHC

Sally Forrest has served as Mr. G.'s mental health counselor. In February 2020, Ms. Forrest completed a Mental Medical Source Statement form and assessed moderate limitations in seven functional areas. Tr. 879-81. Ms. Forrest opined Mr. G. would miss four or more days of work per month due to his mental health impairments and he would be off task 26-50% of the workday. Tr. 881. The ALJ

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 24

found Ms. Forrest's opinion persuasive regarding the assessment of no more than moderate limitations but found the opinion not persuasive regarding the assessment that Mr. G. would be off task and miss work due to his mental impairments. Tr. 1041.

Regarding supportability, the ALJ found the off task and attendance limitations are not explained in the opinion or supported by Ms. Forrest's treatment notes. Tr. 1041. Regarding consistency, the ALJ found the off task and attendance limitations are inconsistent with descriptions of anxiety throughout the longitudinal record and appear extreme compared to observations of other providers. Tr. 1041.

Because Mr. G.'s symptom testimony and the other mental health opinions will be reconsidered, the ALJ should also reevaluate Ms. Forrest's opinion on remand.

## C.    Step Five

Mr. G. argues the ALJ erred at step five because the vocational expert's opinion was based on an incomplete hypothetical. ECF No. 11 at 19. This case is being remanded for the ALJ to reconsider and properly address the medical opinions and Mr. G.'s symptom testimony. This will require the ALJ to make a new RFC determination, and therefore reconsideration of the findings at step five is also required.

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 25

**D.     Remedy**

Mr. G. requests remand for immediate award of benefits. ECF No. 11 at 20. To do so, the Court must find the record has been fully developed and further administrative proceedings would not be useful. *Garrison*, 759 F.3d at 1019-20; *Varney v. Sec. of Health and Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Here, it is not clear from the record that the ALJ would be required to find Mr. G. disabled if the evidence was properly evaluated. Further proceedings are necessary for the ALJ to consider reconsider the medical opinion evidence and Mr. G.'s symptom testimony and conduct a new sequential evaluation.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.

1. Plaintiff Mr. G.'s Brief, **ECF No. 11**, is **GRANTED**.

2. Defendant Commissioner's Brief, **ECF No. 12**, is **DENIED**.

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 26

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for the Plaintiff Mr. G. and the file shall be **CLOSED**.

**DATED** January 16, 2025.

REBECCA L. PENNELL
United States District Judge

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION ~ 27